CARL M. HUBBARTT *et al.*, Plaintiffs-Appellees, *v.* A. R. FRANK, d/b/a
Frank's Petroleum Exploration *et al.*, Defendant-Appellant.

Fifth District No. 75-412

Opinion filed March 10, 1976.

L. Stanton Dotson, of Mattoon, for appellant.

Brazitis, Croegarert, Bowen & Miller, of Olney (Paul A. Croegarert, of counsel), for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an interlocutory appeal by the defendant, A. R. Frank, d/b/a Frank's Petroleum Exploration, *et al.*, pursuant to Supreme Court Rule 307(a)(2) (Ill. Rev. Stat. 1973, ch. 110A, par. 307(a)(2)), from orders entered by the circuit court of Richland County appointing a receiver pendente lite to operate an oil and gas lease previously operated by the defendant under contract with the plaintiffs, Carl M. Hubbartt *et al.*

The plaintiffs in this cause are 41 individual investors in two oil and gas wells, commonly known as the Buss lease, located in Richland County. The plaintiffs acquired their interests in June and July of 1974. On March 13, 1975, the plaintiffs filed a verified complaint for receiver, accounting, injunction, and other relief. Therein the plaintiffs alleged that they owned, by outright assignment, at least 56½ percent of the working interest in the wells and the entire working interest by virtue of the terms of the agreement between plaintiffs and defendant. It was also alleged that defendant, in connection with his promotional activities, delivered to the plaintiffs fraudulently misleading advertising material.

This advertising material was attached to the complaint as Exhibit B. The complaint further alleged that in June, 1974, the defendant entered into an agreement with plaintiffs whereby he offered plaintiffs an option to obtain various percentages in the Buss lease wells to compensate for their prior losses in oil promotions in Christian County. This agreement purportedly assured the plaintiffs of oil production from both wells or the transfer of their interest to a producing well within 60 days from the completion date of August 10, 1974, and the return of their investment in a second well on the Buss lease. According to plaintiffs' verified complaint the defendant failed to obtain production by August 10, 1974, failed to return plaintiffs' investment, and failed to transfer plaintiffs' interest to a producing well. Based on these allegations the plaintiffs sought the appointment of a receiver, an accounting, an injunction against the defendant, and whatever further relief the court may deem just. A hearing for the appointment of a receiver was set for April 1, 1975, and notice was sent to the defendant.

Apparently, the April 1, 1975, setting was continued until April 7, 1975. On April 7, 1975, defendant's counsel appeared in court and filed a motion to quash summons and strike complaint. The following three grounds were alleged by the defendant in support of his motion: (1) the complaint was incomplete, (2) the complaint failed to allege facts sufficient to justify the relief sought, and (3) plaintiffs failed to attach a copy of the contract as required by section 36 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 36). After this motion was denied, plaintiff was allowed to amend the complaint by attaching exhibits to the complaint served upon the defendant. A hearing was then conducted on whether a receiver should be appointed. Plaintiffs and defendant were each represented by counsel at this hearing. After hearing the testimony of Herman Buss, the owner of the land upon which the wells were located, and the testimony of Carl M. Hubbartt, one of the investors, and receiving into evidence defendant's exhibit #1, an Oilwell Completion Report indicating that Buss No. 1 well was completed on September 9, 1974, and was producing at the rate of six barrels of oil a day, the trial court found that plaintiffs had established a good case for appointment of a temporary receiver. Both counsel were then requested to submit names for consideration as receiver. In the order filed on April 18, 1975, Fred C. Pompe was appointed as temporary receiver and he was required to furnish a $5,000 performance bond. No bond was required of the plaintiffs. This appeal followed several unsuccessful attempts by the defendant to have the trial court vacate its order appointing a receiver.

We particularly note the failure of appellant to include in his brief

"a statement of the issues presented for review" as required by Supreme Court Rule 341(e)(2) (Ill. Rev. Stat. 1973, ch. 110A, par. 341(e)(2)). The form required for briefs is quite simple and even includes several illustrations to help guide the diligent practitioner.

The first issue for review is whether the plaintiffs' alleged failure to attach a copy of the contract and other exhibits, upon which their action was based, to the complaint served on the defendant is fatal to plaintiffs' cause of action. The defendant, without citing any cases, claims that it is. We disagree.

■■ Defendant's counsel alleged that the complaint served upon the defendant did not have any exhibits attached to it. However, there is no evidence in the record to indicate that the defendant did not receive copies of all the exhibits other than defendant's unverified motion to quash and strike the complaint which only mentions the absence of the written agreement between the parties. Even this allegation is not supported by any affidavit of the defendant. It was admitted by defendant's counsel that the defendant was served with a copy of the complaint itself and even assuming *ad arguendo* that the written agreement was not attached to the complaint served on the defendant, the record reveals that this agreement was described in the body of plaintiffs' verified complaint, that the contract was prepared by the defendant and presumably available to him, and that the complaint filed with the court did include a copy of all exhibits including the written agreement between the parties. Under these circumstances we find that it was within the court's proper realm of discretion to waive strict compliance with section 36 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 36), which requires that a copy of the agreement be attached to the complaint served upon the defendant (see *People ex rel. Hamer v. Jones,* 39 Ill. 2d 360, 235 N.E.2d 589; *Welsh v. Jakstas,* 401 Ill. 288, 82 N.E.2d 53), just as it is in our discretion to waive strict compliance with Supreme Court Rule 341(e)(2). Furthermore, Supreme Court Rule 104 (d) (Ill. Rev. Stat. 1973, ch. 110A, par. 104(d)), expressly provides that in the event a party fails to comply with the requirement for serving another party as required by subparagraph (a) of that rule the court's jurisdiction is not impaired and it is recommended that the aggrieved party obtain the necessary pleadings from the court, any expense to be reimbursed by the offending party. Ill. Rev. Stat. 1973, ch. 110A, par. 104(d).

The next issue raised on appeal is whether the defendant received a fair hearing. The defendant claims that his counsel was "unaware that a hearing would be held" on April 7, 1975, and was therefore unprepared to defend him against the allegations of the plaintiffs.

■■ The defendant finds support for this claim in the following statement which his counsel made at the beginning of the April 7 hearing, "Let me ask you a question. You are moving a little fast for me. This is a little bit unusual. Your Honor, are we going to be called upon to put our neck on the block with reference to the preliminary appointment of receiver to go out and take over this man's property we don't have a Complaint according to the Court's ruling on file." However, after the trial court stated that if the plaintiffs presented sufficient evidence the court could properly appoint a receiver, the defendant's counsel remained mute. He neither asked for a recess to review the exhibits he allegedly received for the first time nor requested a continuance to prepare the defendant's defense. Instead, he allowed the hearing to proceed without any further objection. He was given an opportunity to cross-examine the witnesses proffered by the plaintiffs and he availed himself of it. Furthermore, the record shows that the defendant was given notice of the April 1, 1975, setting at the same time he received the complaint filed by the plaintiffs. At the hearing the defendant's counsel "acknowledged" the defendant was served by summons on March 31, 1975. Indeed, as noted earlier, on the day of the hearing the defendant's counsel filed, in open court, his motion to quash the summons and strike complaint in response to summons served upon him by the plaintiffs. Under these circumstances we find no merit in defendant's claim that a receiver was improperly appointed at an *ex parte* hearing in which the defendant was deprived of an opportunity to defend himself.

A collateral issue raised by the defendant is whether the plaintiffs presented sufficient evidence to make a prima facie case for the appointment of a receiver.

As noted by our Supreme Court in *People ex rel. Scott v. Pintozzi*, 50 Ill. 2d 115, 123, 277 N.E.2d 844, 849,

> "The appointing of a receiver is an exercise of equity jurisdiction and rests largely in the discretion of the appointing court, the object being to secure and preserve the property for the benefit of all concerned so that it might be subjected to such order as the court might render."

We echoed these sentiments in *Hurst v. Papierz*, 16 Ill. App. 3d 574, 581-82, 306 N.E.2d 532, 538, wherein we said,

> "Appointment of a receiver is considered generally to be a harsh remedy. Nevertheless, it resides in the arsenal of equitable remedies to be used when in the sound discretion of the chancellor it is needed to insure complete justice is done between the parties. [Citations.] In equity, the particular circumstances surrounding the case are the criteria by which to judge whether or

not the appointment of a receiver was reasonable, *i.e.*, not arbitrary, capricious and an abuse of discretion."

Applying these standards to the facts here presented we cannot say that the appointment of a temporary receiver was an abuse of discretion.

The plaintiffs' verified complaint sets forth numerous facts regarding the nature of acts committed by the defendant which are alleged to be fraudulent. It also sets forth the lack of production from the Buss wells and the absence of an adequate remedy at law which could be pursued by the plaintiffs. It is alleged that the lack of production results from the defendant's failure to properly operate the wells and that the plaintiffs will continue to suffer irreparable damages unless a receiver is appointed. In addition to these verified allegations, which stood unanswered at the time of the hearing, is the testimony of the two witnesses plaintiffs presented at the hearing. From the verified complaint and the testimony of these witnesses the trial court was justified in concluding that unless oil was produced and sold in a commercially acceptable quantity the plaintiffs would receive no return for their large investment, in excess of $80,000, and, consequently, would suffer a continuing daily loss. The trial court was further justified in concluding that the defendant's failure to properly develop the Buss leases would continue to damage the plaintiffs unless the management and operation of these leases was placed in the hands of someone other than the defendant.

The defendant argues that despite these conclusions the plaintiffs were not entitled to the appointment of a temporary receiver. The defendant argues that the plaintiffs had an adequate remedy at law and are not entitled to any equitable relief. He suggests that the plaintiffs had a statutory remedy under "An Act in relation to oil and gas interests in land" (Ill. Rev. Stat. 1973, ch. 104, par. 25 *et seq.*) which would preclude the equitable remedy of receivership. However, as noted by the plaintiffs, this Act is designed to deal with the drilling of *new* wells when the owners of the majority interest wish to drill for and remove oil or gas in order to protect the leasehold and such owners are opposed by the minority interest holders. How this statutory remedy, even if applicable, provides the plaintiffs with an adequate remedy is unexplained.

■■ Similarly, we see no other adequate remedy at law for the plaintiffs. There is no standard by which to assess damages. And, if the Buss leases are not prudently developed by the defendant the plaintiffs may be subjected to suit charging abandonment of the leases. The only means of ensuring that the property and the respective interests of the parties will be preserved until a determination on the merits is the appointment of a temporary receiver.

■■ The final issue raised is whether the trial court's order which

included a provision for a performance bond from the temporary receiver, but required no bond from the plaintiffs is "void." As noted by the defendant the issue of whether a bond should be required from the plaintiffs was ignored by the court below. While we consider it error to appoint a receiver pendente lite without requiring a bond from the moving party *or formally finding that no bond should be required* (Ill. Rev. Stat. 1973, ch. 22, par. 54), when proper grounds exist for the appointment of a receiver pendente lite the failure to comply with these requirements will not render void the entire order appointing such receiver. (See *Walenti v. Krolik*, 234 Ill. App. 407.) Instead, what is required is remandment to the trial court with instructions that the court conduct a hearing and determine whether to require a bond from the plaintiffs or to expressly dispense with the need for such bond for good cause shown.

Accordingly, that portion of the order entered by the circuit court of Richland County appointing a receiver pendente lite is affirmed and the cause is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part, remanded with **directions.**

KARNS, P. J., and JONES, J., concur.